Dated: September 20, 2010

_____
**JAMES M. MARLAR
Chief Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 13 |
| | ) |
| TERENCE ANDREW LYON and CHRIS MCCARRON LYON, | ) Case No. 4:09-bk-30568-JMM |
| | ) **MEMORANDUM DECISION** |
| Debtors. | ) |

This is a contested stay relief proceeding arising from the motion of Pentagon Federal Credit Union ("Pentagon") to allow it to set off Debtors' funds in a deposit account, as of the petition date, against the loan balance owed by the Debtors to Pentagon (ECF No. 36)..

## FACTS AND PROCEDURE

The material facts are not in dispute.

Debtors filed a voluntary chapter 7 petition on November 25, 2009; the case was converted to chapter 13 on February 9, 2010.

On the petition date, Debtors had a total of $18,977.49 in a money market deposit account with Pentagon.

Since 2002, Debtors have had a Pentagon Visa Platinum credit card. In connection with the line of credit loan, Debtors executed and delivered to Pentagon the "Visa Platinum Cardholder Agreement and Disclosure Statement" ("Agreement"). Paragraph 10 of the Agreement contained the following "boilerplate" provision, which was set forth in capital letters and bold type:

> 10. TO PROTECT US IF YOU ARE IN DEFAULT ON ANY CREDIT EXTENDED OR CASH ADVANCED UNDER THIS ACCOUNT, YOU PLEDGE ALL OF YOUR SHARES, DEPOSITS, PAYMENTS, AND DIVIDENDS WHICH MAY BE RECEIVED, WHETHER HELD JOINTLY OR INDIVIDUALLY, UP TO THE AMOUNT OF YOUR OUTSTANDING BALANCE. THIS DOES NOT INCLUDE YOUR INDIVIDUAL RETIREMENT ACCOUNT. WE MAY TAKE ALL THE SHARES NEEDED BY US TO REPAY YOUR CREDIT EXTENSION OR CASH ADVANCE IF IT IS NECESSARY TO TAKE ALL OF YOUR SHARES FOR THE PAYMENT OF THIS ACCOUNT, YOU UNDERSTAND YOUR MEMBERSHIP IN PENTAGON FEDERAL MAY END. COLLATERAL SECURING OTHER LOANS WITH THE CREDIT UNION MAY ALSO SECURE THIS LOAN.

Debtors also each signed a separate page entitled "Authorization for Platinum Rewards Credit Card" ("Authorization"), which was date-stamped January 6, 2002. The Authorization contained the following paragraph directly below the signatures:

> My signature indicates that I'm aware if I use the Pentagon Federal credit card account or authorize its use or do not cancel it within 30 days after the card is received, the Pentagon Federal Agreement provided with the card is binding on me. I AUTHORIZE A SECURITY INTEREST IN THE PENTAGON FEDERAL SHARE ACCOUNT LISTED ABOVE AND ANY OTHER PFCU ACCOUNTS I MAY HAVE UP TO THE AMOUNT OF MY OUTSTANDING BALANCE TO PROTECT PENTAGON FEDERAL IF I DEFAULT ON ANY CREDIT EXTENDED OR CASH ADVANCED UNDER MY CREDIT CARD ACCOUNT(S).

There were no specific deposit account numbers listed in the documents.

On the petition date, the line of credit was in default. Pentagon filed a proof of claim for $33,525.99 for the credit card debt, to which Debtors did not object.[1]

After Debtors filed for bankruptcy protection, Pentagon placed an "administrative hold" upon the deposit account. See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 19-21 (1995).

On May 20, 2010, Pentagon filed a "Motion for Relief from the Automatic Stay" ("Motion"), seeking authority to complete the setoff of the $18,977.49 against the debt, claiming a

---

[1] Pentagon's motion for stay relief asserts that it filed a "secured" proof of claim. *See* ¶ 10 at p. 4. While Proof of Claim No. 8 was not designated as a "secured" claim, Pentagon attached a copy of the Authorization and an account statement. A creditor that has a right to setoff has a "secured" claim. See In re Calore Exp. Co., 288 F.3d 22, 46 (1st Cir. 2002) ("[A] claim accompanied by a right of setoff is a 'secured claim' within the meaning of the Bankruptcy Code, 11 U.S.C. § 506(a)."); 5 Collier on Bankruptcy ¶ 553.06[3][b][4] (15th ed. rev. 2010).

contractual right of setoff. It argued that "[t]he Note, Security Agreement, and the bank's continuous possession of the Deposit Account evidence Pentagon Federal Credit Union's valid, enforceable and perfected first-priority lien upon the Deposit Account."

Debtors filed a written opposition contending that the alleged security interest was unenforceable because it did not comply with the federal Consumer Credit Protection Act and specifically the Truth in Lending Act ("TILA") contained therein. See 15 U.S.C.A. § 1601 et seq.; Regulation Z, 12 C.F.R.226.12(d).

A preliminary hearing was held on September 7, 2010. The parties agreed that the matter had been fully briefed, that no material facts were in controversy, and the only issue was one of law.

## ISSUE

Whether Pentagon has a valid consensual security interest in Debtors' money market account which would entitle it to set off the Debtors' funds on deposit against the line of credit loan debt.

## LEGAL ANALYSIS

The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other. While the Bankruptcy Code creates no federal right of setoff, § 553(a) generally preserves in bankruptcy the rights of setoff which otherwise exist. In re Bakersfield Westar Ambulance, Inc., 123 F.3d 1243, 1245 (9th Cir. 1997).

In bankruptcy, a creditor having setoff rights in regards to prepetition obligations must obtain relief from the automatic stay to complete the process. See 11 U.S.C. § 362(a)(7).

The parties agree that if Pentagon has a valid security interest, it has a right to setoff under applicable federal and/or state law, and "cause" would then exist for relief from the automatic

stay pursuant to § 362(d)(1).[2] See In re Edgins, 36 B.R. 480 (9th Cir. BAP 1984); In re Lough, 163 B.R. 586 (Bankr. D. Idaho 1994). Generally, in a hearing on a motion to lift the stay, the court determines whether the creditor's claim to the estate's property is "colorable." Colore Exp. Co., 288 F.3d at 35; In re Johnson, 756 F.2d 738, 740 (9th Cir.1985).

The court is also mindful that "setoffs in bankruptcy have long been 'generally favored,' a presumption in favor of their enforcement exists." In re De Laurentiis Enter. Group Inc., 963 F.2d 1269, 1277 (9th Cir. 1992) (citation omitted).

Debtors contend that they did not consent to the security interest and, under federal consumer protection laws, the security interest is invalid. The parties do not dispute that Pentagon is subject to such laws.

Specifically, 15 U.S.C.A. § 1666h of TILA provides:

> (a) Offset against consumer's funds
>
> A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless--
>
> (1) such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card issuer periodically to deduct all or a portion of such debt from the cardholder's deposit account, and
>
> (2) such action with respect to any outstanding disputed amount not be taken by the card issuer upon request of the cardholder.

Regulation Z, which implements this section, nevertheless provides that a card issuer may offset a cardholder's indebtedness <u>if it obtains or enforces a consensual security interest in the funds</u>. See 12 C.F.R. § 226.12(d)(2).[3]

---

[2] Thus, other than the issue of a consensual security interest, the court need not address the legal basis for Pentagon's setoff right, which has not been challenged.

[3] This entire provision states:

(d) Offsets by card issuer prohibited. (continued . . .)

4
Case 4:09-bk-30568-JMM   Doc 67   Filed 09/20/10   Entered 09/20/10 16:12:41   Desc
Main Document    Page 4 of 8

The applicable Official Staff Commentary to this section refines the meaning of "consensual" as follows:

> 1. Security interest—limitations. In order to qualify for the exception stated in § 226.12(d)(2), a security interest must be affirmatively agreed to by the consumer and must be disclosed in the issuer's initial disclosures under § 226.6. The security interest must not be the functional equivalent of a right of offset; as a result, routinely including in agreements contract language indicating that consumers are giving a security interest in any deposit accounts maintained with the issuer does not result in a security interest that falls within the exception in § 226.12(d)(2). For a security interest to qualify for the exception under § 226.12(d)(2) the following conditions must be met:
>
> - The consumer must be aware that granting a security interest is a condition for the credit card account (or for more favorable account terms) and must specifically intend to grant a security interest in a deposit account. Indicia of the consumer's awareness and intent could include, for example:
>
>   — Separate signature or initials on the agreement indicating that a security interest is being given
>
>   — Placement of the security agreement on a separate page, or otherwise separating the security interest provisions from other contract and disclosure provisions
>
>   — Reference to a specific amount of deposited funds or to a specific deposit account number

---

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: Obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

12 C.F.R. § 226.12

- The security interest must be obtainable and enforceable by creditors generally. If other creditors could not obtain a security interest in the consumer's deposit accounts to the same extent as the card issuer, the security interest is prohibited by § 226.12(d)(2).

52 FR 10875-02 (April 6, 1987).

Debtors raise two main problems with the security interest in this case. First, they maintain that the boilerplate terms fall short of the requirements for a security interest and merely acknowledge the general statutory lien rights of the credit union. See 12 U.S.C.A. § 1757(11).

They cite the case of In re Clark, 161 B.R. 290 (Bank. N.D. Fla. 1993), which also involved a motion for stay relief by a federal credit union to permit it to set off the debtors' indebtedness under a Visa credit card account against funds on deposit with the credit union. That is where the factual similarity ends.

The credit card agreement signed by the Clark debtors provided as follows:

> I understand and agree that the credit union has the authority to impress and enforce a lien on all present and future shares in my name to the extent of that portion of the loan balance which may be in default, including costs of collection and reasonable attorney's fees.

161 B.R. at 292.

The bankruptcy court held that this language was not a grant of a security interest but rather an acknowledgment of the credit union's statutory lien rights, which the TILA regulations make clear is not the type of "the security interest" contemplated.

In contrast to the language in Clark, Paragraph 10 of Pentagon's Agreement contains an express "pledge" of the cardholders' "deposits." The Authorization further expressly states that the cardholders "authorize a security interest." This court has no difficulty finding that the language in Pentagon's agreement, even though boilerplate, meets the requirements of TILA.

Debtors' second argument is related to the form of the security interest provisions which, they maintain, do not contain "the indicia of the Debtors' awareness and intent to enter into a consensual security agreement." Debtors' Objection to Motion, p. 5. Debtors contend that: (1) the language granting a security interest is not on a separate page; (2) the provisions do not reference by name or account number any specific deposit account held by Debtors; and (3) the signatures

appear to be general in nature for the use of the card and not specifically for granting a security interest. These arguments are without merit.

The Official Staff Commentary states that the security interest provisions should be placed on a separate page, or otherwise separated from other contract and disclosure provisions. Paragraph 10, while imbedded in the other contract terms, is purposefully enlarged and boldfaced to stand out from the other terms. Indeed, the security interest provision on the Authorization page is on a separate page from other contract and disclosure provisions.

Debtors suggest, in a footnote, that it is unclear whether the Authorization is part of the same document. This comment actually proves the point, i.e., that a separate page was used, while failing to prove that two agreements were executed, because no evidence was presented that Debtors entered into two different Visa credit card agreements with Pentagon on the date in question.

Next, according to the Official Staff Commentary, there should be a reference to a specific amount of deposited funds or to a specific deposit account number. Paragraph 10 specifically states that Debtors are pledging "all of" their shares and deposits. The Authorization provides a security interest "in the Pentagon Federal share account listed above and any other PFCU accounts I may have." The language specifically references any and all of Debtors' accounts with Pentagon.

Finally, there should be a separate signature or initials on the agreement indicating that a security interest is being given. Debtors signed the Authorization directly above the terms by which they were agreeing to grant Pentagon a security interest. The security interest terms provide that Debtors' "signature[s]" indicate they are "aware" that they are bound by the Agreement. The signatures and context speak for themselves. In addition, all such terms are in capital letters and bold type, designed to stand out from the other contract terms. Compare In re Okigbo, 2009 WL 5227844, at * 4 (Bankr. D. Md. 2009) (terms in fine print meant to create a security interest contained "none of the bells and whistles required so as to focus Debtor's attention on it.")

Based on the foregoing analysis, the court concludes that the Agreement meets the requirements for a consensual security interest under TILA and Regulation Z.

## **CONCLUSION**

By separate Order, the automatic stay shall be lifted to allow Pentagon to set off the balance in Debtors' money market account against the loan balance.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following:

John N. Skiba, Attorney for Debtors

Lisa S. Kass, Attorney for Pentagon Federal Credit Union

Dianne C. Kerns, Trustee

Office of the United States Trustee